# COOS,

## HUTCHINS *v.* CARLETON.

Whether when a defendant in trespass sets up a title under a conveyance from one shown to have been seized, the plaintiff may rebut that evidence of the defendant's seizin, by proving an earlier conveyance from the supposed grantor to a stranger, *quære.*

Where the estate of a mortgagee and a mortgagor co-exist in the same person, a court of law will, when necessary for just purposes, and to effectuate the proper intention of parties, treat them as distinct interests.

The words "assign and make over" are sufficient, in a deed duly executed, to pass a freehold.

A mortgagee in possession may, by a deed in common form, and without assigning the debt, convey a seizin that shall be good against all but those who stand in the place of the mortgager, and even as against them, until redemption.

TRESPASS, for breaking and entering the plaintiff's close, in Whitefield, being lot 8 in range 8, on December 1, 1845, and on divers other days, and cutting and carrying away his pine trees, &c.

The plaintiff claimed the *locus in quo,* by virtue of an attachment thereof upon a writ in his favor against James Grover, 2d, made July 22d, 1841, in which action judgment was duly recovered in the court of common pleas, in Grafton county, February term, 1843, upon which execution was duly issued February 28, 1843, and was duly extended upon the *locus in quo,* April 18, 1843, and seizin and posses-

sion given to the creditor, May 25, 1843. The levy was duly recorded September 2d, 1843.

In the fall of 1843, or winter of 1843–4, John P. Gove, by the direction of Ira Goodall, the attorney of the plaintiff, and who in that capacity had recovered said judgment and caused the levy to be made, entered upon said lot to ascertain if any persons were committing trespasses thereon. Thomas Montgomery, also, by direction of said Goodall, entered upon said lot prior to the deed of Giles to the defendant hereafter mentioned; and prior, also, to the entry of Giles hereafter mentioned, B. H. Chadbourn, in behalf of the plaintiff, by direction of said Goodall, paid taxes on the lot after the levy—the tax of 1843.

The defendant caused timber to be cut and hauled from the lot within the period alleged in the plaintiff's writ.

The defendant gave in evidence a deed of the lot in question from Thomas Carlisle and George Bellows to James Grover 2d, dated August 30th, 1836, acknowledged September 2d, 1836, and recorded on the same day. Also a deed from James Grover, 2d, to Hollica Greenwood, dated September 20, 1837, acknowledged October 5th, and recorded October 18, 1837. This deed contained the usual covenants of warranty. Also a deed from said Greenwood to James A. McKean and the said Carleton, dated June 7th, 1842, acknowledged and recorded.

Also a deed from said McKean to the defendant, of his interest in the lot, dated April 8, 1843, acknowledged and recorded.

The defendant gave in evidence, also, a quitclaim deed of said lot, and also of lot 17, in the 24th range, from Nehemiah Giles to the defendant, dated January 8th, 1845, acknowledged on the same day and recorded May 6th, 1845. Also an office copy of a deed of mortgage from Hollica Greenwood to Truman Stevens, dated September 1, 1837, and acknowledged and recorded on the same day, to hold in trust for Bellows, Redington & Co. of sundry parcels of land in White-

field, viz. : lot 8, in the 8th range, being the lot in question, and one undivided half of lots 7, in 5th range, 6 in 7th, 4 in 2d, 4 in 1st, 5 in 2d, 6 in 22d, 7 in 23d, 6 in 24th, 17 in 24th, 9 in 20th, 9 in 24th, except, &c. This deed contained full covenants of warranty, and was given to secure three notes, dated January 1st, 1836, signed by said Greenwood and Grover, for the sum of $2,800,57 each, and annual interest, and payable to George P. Redington and M. P. Little, or order, and by them indorsed to Bellows, Redington & Co. ; and also three other notes of even date with the mortgage, payable to Bellows, Redington & Co., or order, bearing annual interest, one of them for $1,001,62, and one for $1,250, both payable in one year, and the other for $1,250, and payable in eighteen months.

The defendant also gave in evidence an office copy of an assignment, indorsed upon the mortgage deed, as follows :

" In consideration of the sum of ten thousand dollars, to me paid in trust for Bellows, Redington and Co., by Nehemiah Giles of Walpole, N. H., I hereby assign and make over to the said Giles the within described mortgaged premises, to have and to hold the same in as full and ample a manner as I might have and hold the same, had not this assignment been made. In witness whereof, I have hereunto set my hand and seal, this 28th day of January, A. D. 1838.

Truman Stevens.

Signed sealed and delivered in presence of
    Jon. L. Gibb,
    H. A. Bellows.

This instrument was acknowledged and recorded January 5, 1842.

Said notes were regularly indorsed and assigned to Giles, on the day of the date of the above assignment.

The defendant also gave in evidence a power of attorney.

from said Giles to George Little, dated January 5, 1842, authorizing him, as attorney to said Giles, to enter upon and take actual possession of all said mortgaged premises, for the purpose of foreclosing the right to redeem the same.

It appeared that, acting under said power, said Little, on the 25th day of March, 1842, late in the afternoon, went to Whitefield, to the house occupied by said Greenwood, and stated to him his business, and read to him the power of attorney, to all which Greenwood said that he had no objection. And at the same time, on the back of the power, the said Little made a memorandum, of which the following is a copy:

" March 25, 1842. At 35 minutes after 5 o'clock, entered on the premises, for the purpose of foreclosure of the mortgages, with the consent of Hollica Greenwood."

The lot occupied by Greenwood, and having his dwelling-house upon it, was lot No. 4, in the second range, and was the only lot described in the mortgage having any cultivation upon it, and was situated two miles distant from lot 8, in 8th range, by the ordinary way of travel, and was one mile distant from the road in the woods. It did not appear that George Little went upon any other lot than lot 4, in the 2d range. It appeared, also, that said Giles, in the fore part of January, 1845, went upon the lot of land in question a few days before he executed his deed to the defendant, claiming said lot.

Giles gave due notice of the doings of said Little, his attorney aforesaid, by an advertisement thereof, dated August 3d, 1842, and published in the Coos Democrat, in the papers of August 9th, 16th, 23d, 30th, 1842.

It appeared that Greenwood and Grover, after the deed of Carlisle and Bellows, to Grover, entered upon the lot in question, and were upon it, in fact, several times, at least twice, the next year after the deed was given.

In proof of this fact, said Hollica Greenwood was called as a witness by the defendant, and after receiving a release

from the defendant from the covenants in his deed to Truman Stevens and McKean and the defendant, and after objection by the plaintiff's counsel, was admitted to testify subject to said exception.

At the trial, it was made to appear that the aforesaid notes had been assigned and transferred to Ira Goodall; the time of the transfer did not appear.

The defendant further gave in evidence a deed from said Hollica Greenwood to Truman Stevens, dated October 16, 1837, with full covenants and warranty of said lot No. 8, in the 8th range, and of No. 7, in the 5th, and 6, in the 7th ranges, to hold in trust for said Bellows, Redington & Co., acknowledged on the day of its date, and recorded October 18, 1837.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the superior court upon the foregoing case. Judgment to be entered on the verdict, or the verdict to be set aside, and judgment entered for the defendant, according to the opinion of the court on the foregoing case.

*Morrison*, for the plaintiff.

I.  What are the rights of the parties upon the assumption that the equity of redemption was merged in the legal title, and so Giles acquired no interest in No. 8, by the assignment?

II.  What are their rights, upon the assumption that there was not a merger as to the lot?

1.  If either party to a suit shows a good title as against the other, the latter cannot prove a better in a third person, unless he traces the title to himself. A union with such person will not avail any thing, unless the title was in him at the time, or unless he conveyed with warranty, and afterwards acquired it; for the virtue is not in the person, but in the title. A deed from one who had parted with all his title is no better than a deed from another who never had any; for no man can convey to another any greater interest

than he has himself at the time, except where there is a warranty, a subsequent title may pass by estoppel. On the other hand, whenever either party has not a valid title as against the other, except through a third person, the other may prove that nothing passed from such person, either because he had before conveyed, and so had nothing to deed, or else that, for some reason, he did not transmit such title as he had.

Each may disprove the other's title, but cannot for any other purpose show that some one else has a stronger claim than either. *Chambers* v. *Donaldson*, 11 East 65; 1 Chit. Pl. (9th Am. ed.) 575; *Enfield* v. *Permit*, 8 N. H. Rep. 512; *Baily* v. *March*, 3 N. H. Rep. 274; S. C. 2 N. H. Rep. 522; *Gibson* v. *Baily*, 9 N. H. Rep. 168; *King* v. *Burns*, 13 Pick. 24; *Shauber* v. *Jackson*, 2 Wend. 14; *Jackson* v. *Harden*, 4 Johns. 202; *Jackson* v. *Ladd*, 2 Caines 183; *Holmes* v. *Ammidown*, 3 Met. 467; *Wendell* v. *Blanchard*, 2 N. H. Rep. 457; *Moore* v. *Moore*, 8 Shep. 350; 3 Met. 243.

According to these principles the plaintiff is entitled to recover; for he proved a levy upon the land by metes and bounds, duly returned and recorded, and entry under that levy, and a continued claim, evidenced by the payment of taxes. This, of course, should prevail over the subsequent entry by Giles upon No. 8, if, as we now assume, there was a merger. And if the case rested here, the defendant clearly could have no defence. *Wendell* v. *Blanchard*, 2 N. H. Rep. 457; *Moore* v. *Moore*, 8 Shep. 350; 3 Met. 243.

The defendant could not defeat the recovery by proving a better right in Stevens, because he would not thereby disprove the plaintiff's title as against him. Notwithstanding Stevens might have a better title than the plaintiff, the plaintiff would have a better title than the defendant. Therefore, the defendant has no answer, unless the deed from Greenwood to McKeene and Carleton, with the quitclaim from McKeene can save him. But the defendant's own evidence proves that all title had departed out of Greenwood, by the

Hutchins v. Carleton.

two deeds to Stevens, before the deed to McKeene and Carleton, and so none whatever passed by the deed to them. The court cannot disregard this evidence, put in by the defendant, and it unquestionably shows that McKeene and Carleton took nothing by their deed.

If the defendant had not proved the deeds to Stevens, the plaintiff would have a right to do so, upon the principle before stated. The defendant has no defence to the plaintiff's claim, except by the deed to McKeene and Carleton. If that is laid out of the case, the plaintiff must recover.

Hence the plaintiff could show the prior conveyances to Stevens, not, indeed, for the sake of proving title in Stevens, but for the purpose of disproving the title set up by the defendant, by evidence that his supposed grantor granted nothing, because he had nothing to grant. It would thus be evident that although the defendant had connected with Greenwood, he had not connected with Grover, nor with the title.

The plaintiff, in like manner, has connected with Grover, but not with his title, because he had parted with it before the levy. The levy has the same effect as a deed. The result is, that though there is a title from possession earlier than the plaintiff's, neither party connects with that title, and the cause must, therefore, be determined according to their rights, irrespective of it. Upon this view, the plaintiff should recover.

By the conveyance in October 1837, Stevens became seized of an absolute estate in fee simple of all the land included in that deed, by reason of a merger of the lesser estate in the greater; and so the assignment did not transfer any right to No. 8. 4 N. H. Rep. 363; 2 Black. Com. 177; 4 Kent's Com. 100; *Eaton* v. *George*, 2 N. H. Rep. 300; 2 Cowen 300; *Roberts* v. *Jackson*, 1 Wend. 478; *Cowper* v. *Whitney*, 3 Hill 76; *Shepherd* v. *Spalding*, 4 Met. 416; *Pynchon* v. *Stearns*, 11 Met. 304.

2. If, however, the court should be of the opinion that,

under the circumstances, there was not a merger, the second question must be considered.

Giles did not transfer the debt to the defendant. Hence, upon the assumption that there was not a merger, the defendant, in order to defeat the suit, must successfully maintain either that there was a foreclosure, or else that without it, or a transfer of the debt, he still obtained a possession equal to the plaintiff's prior possession.

There was not a foreclosure; for, in the first place, there was not, even in respect to No. 4, because, if a possession was taken, it was not continued. Greenwood was then in the occupation of No. 4; by what right does not appear. He was not in as mortgagee, for he had before conveyed to Stevens. Perhaps it is not material how he was in the lot. The decisive fact is that he did not agree to remain as Giles' tenant. No inference can be made that he did so agree, from his saying that he had no objections to Little's taking possession as he proposed to do. Though he might not have objections to Little's taking possession, he might, to his retaining it. He might have very serious objections to remaining as Giles' tenant, and, as such, accountable for the rent to him. Greenwood was left in the occupation without further agreement on his part, and upon this evidence cannot be regarded as Giles' tenant. *Lawrence* v. *Fletcher*, 8 Met. 164, is directly in point.

In the second place, whatever was done upon No. 4 cannot have any operation upon No. 8, which was entirely separate from it, and was two miles off, in the woods.

None but a constructive entry upon No. 8 can be pretended. One objection to this is that Little had no authority, under his power of attorney, to make a constructive entry, but only to "take actual possession." Another is that in case of a mortgage of several distinct lots, there cannot be an operative constructive entry beyond the parcel actually entered upon.

The ancient law of entry, as laid down by Littleton and

Coke, has no application to the case in hand. By the old feudal law an entry was very frequently required where it is not now necessary. For instance, upon the death of the ancestor, if his eldest son died before making an entry, the estate did not go to his heirs, but to the next of kin to the person last seized. 1 Lit. §§ 1, 3, 8 ; 2 Black. Com. 312.

In such event, and many similar ones, one absurd rule of law was allowed as an antidote for another equally absurd. The law as to what should constitute an entry must be considered in reference to the law which required an entry. And even Lord *Coke* says, that " Some do take a diversity where an entry shall vest, or divest an estate, that there must be several entries into the several parcels. And therefore if the lord entereth into a parcel generally for a mortmain, or the feoffor for a condition broken, or the disseisee into a parcel generally, the entry shall not vest or divest in these or like cases, but for that parcel. 1 Coke Lit. § 8.

An adverse actual possession of one lot will not constitute a possession of another, entirely distinct, although in the same county or town, included in the same deed. " The doctrine cannot be extended to detached parcels, of a part of one of which the party may have actual possession. By no fair construction or intendment could he be said to be in possession of the other parcel." *Farrar & a.* v. *Eastman & a.*, 10 Greenl. 175. See. also, 6 Cow. 617.

The statute contemplates none but an actual entry, because it requires a " continued actual peaceable possession." Rev. Stat. ch. 132, § 14.

There cannot be a " continued actual possession," without an actual entry, and the statute knows no other. An actual entry can be made upon wild as well as upon cultivated land, and the actual possession thus commenced be kept up by the payment of taxes, and such other acts of ownership as the nature of the property will admit of. It is absurd to say that the possession of a lot in Bethlehem is possession of one in Lebanon, or even in a remote part of the same

town, notwithstanding they may happen to be in the same deed.

Finally, even if in case of a mortgage of several distinct lots, there can be an operative, constructive entry, beyond the parcel actually entered upon, there was not so much as a constructive entry upon No. 8.

I. Because it does not appear that Greenwood, on the 25th of March, 1842, was in possession of No. 8. In the fall of 1837, by two deeds, he conveyed his whole title. He was in the occupation of No. 4, although it does not appear by what right, or for whose benefit. But he was not in the occupation of No. 8, and an entry upon one parcel was never a constructive entry on another, held by a different person. If the person upon whom the actual entry was made had possession of both parcels, in some instances, only one entry was necessary. Such was not the fact here. Greenwood had no possession of No. 8. Lit. §§ 417, 418; Co. Lit. 526.

II. Further, it was indispensable to the operation of the entry, beyond No. 4, that Little should have declared that he made it in the name of all the lots. Livery of seizin made in one parcel, in order to be effectual beyond it, must be in the name of all the rest, " comprehended within the same feoffment." 1 Coke Lit. § 61.

The same is true in respect to an entry. It must be in the name of all the lands or tenements into which he hath a right to enter. 3 Co. Lit. § 417.

Upon this declaration Lord *Coke* says : " If one disseise me of two several acres in one county, and I enter into one of them, generally, without saying in the name of both, this shall revest only that acre wherein entry was made." *Ibid*, note.

The reason seems to be, that the entry cannot be extended beyond the act without the declaration, which then becomes a part of the act. Whatever may have been the reason, the rule requiring the declaration was inflexible. Lit-

tle said nothing of the kind. It does not even appear that he intended his entry to operate beyond No. 4. But, at any rate, he did not say anything to extend it further if he could.

For all these reasons there was not a foreclosure. It seems to be conceded, (as indeed it must be upon the facts,) that no part of the debt went to Carlton, and I shall not discuss the question. No foreclosure is proved. The entry by Giles upon No. 8 was not till 1845, two years after Hutchins made his levy.

Under these circumstances, the quitclaim deed from Giles to the defendant did not give him a title equal to that which the plaintiff has by a prior possession, under color of title. We admit that a mortgagee in possession may deed it. *Wallace* v. *Goodall.* This is no more than any person who has a possession may do. One in actual possession may transfer it, notwithstanding he has a mortgage of the premises, which he does not transfer.

But the real question is, what is the value of such possession? Neither *Wallace* v. *Goodall*, nor any other decision, has determined this question, so far as I know. We submit that disconnected from the mortgage, the debt, which is its life, the possession is worth no more than any other of the same age. It is sometimes said to be a rightful possession. So is any one except as against some person who shows an earlier, or in some way, a better title. Possession by a mortgagee, detached from his mortgage, has no peculiar claim to be considered rightful. Indeed, when the mortgagee retains that which alone gave him color of right, and limit, to his claim, there would seem to be some reason to hold that nothing passes beyond the actual occupation, that is, nothing beyond what he might give if he did not have the mortgage which he does not transfer. At any rate, to allow that the grantee, without the debt, obtains a possession of the whole lot, which affords as good evidence of right as any other mere possession, under color of title, of

the same age, is the full extent warranted by either principle or authority.

An analysis of Giles' rights will exhibit the Greenwood and Grover title, and also a possession of itself affording some evidence of title, and to which the former gave color, extension and limit. Did both of these go to Carleton, or only one? We say only the latter, and this not at all strengthened by the former, or, at least, not beyond what we have before stated. The distinction is that made in respect to Greenwood, between the person and the title.

Though the defendant connects with Giles, he takes only that kind of title which can be communicated by a union of the nature of his with Giles, not the Greenwood and Grover title, or any part of it, because it will not pass by a union of such nature. Until foreclosure, the interest of the mortgagee is a chattel, and as mortgagee he has nothing that can either be deeded or levied upon, separate from the debt. We say as mortgagee, nothing, while we admit that if he has also a possession, he may convey it, which is no more than any man may do. Some courts and writers have held that the interest of a mortgagee is as thus stated, at least, until an entry to foreclose, while they have not determined the effect of an entry to foreclose, but no foreclosure. *Jackson* v. *Williams*, 4 Johns. 41; *Hitchcock* v. *Harrington*, 6 Johns. 290; *Collins* v. *Surrey*, 7 Johns. 278; *Ayman* v. *Bill*, 5 J. Ch. Rep. 570; *Ellison* v. *Daniels*, 11 N. H. Rep. 274; *Glass* v. *Ellison*, 9 N. H. Rep. 72; 4 Kent's Com. 5th ed. 161.

The plaintiff would stand well enough upon these authorities; for it does not appear that Giles' entry upon No. 8, in 1845, was to foreclose. But there are others that, with good reason, hold that the nature of the interest remains unchanged till a foreclosure. 5 N. H. Rep. 430; 11 N. H. Rep. 481–2; *Eaton* v. *Whiting*, 5 Pick. 468; *Dewey* v. *Van Dewson*, 4 Pick. 19; *Huntington* v. *Smith*, 4 Conn. Rep. 235; *Wilkins* v. *French*, 20 Maine Rep. 117; *Buck* v. *Sanders*,

1 Dana, 188; 4 Kent's Com. 5th ed. 166, n.; *Smith* v. *People's Bank*, 24 Maine Rep. 185. This is very direct and express.

Either way Giles' rights, as mortgagee, could not pass without the debt. The conclusion of the whole matter is this: none but possessory titles are shown in any one,— that of Grover and Greenwood, which was first, that of the plaintiff, and that which the defendant derived from Giles' entry in 1845. Both parties fail of proving a connection with the first title. Of the other two the plaintiff's is the better, because it is from a prior possession under color of title, and he should recover.

*Bellows,* for the defendant.

The case finds an extent of an execution on No. 8 in 8th range, in favor of the plaintiff against J. Grover, April 18, 1843. Seizin given May 25, 1843, and an entry.

The defendant showed a deed of this lot from Thomas Carlisle and George Bellows to James Grover, 2d, dated August 3, 1836, and an entry on several occasions by Grover. Deed, James Grover to Hollica Greenwood, dated September 20, 1837. Deed, Greenwood to James A. Mc-Kean and the defendant, dated June 7, 1842. McKean to the defendant, dated April 8, 1843.

So far, this makes a good title in the defendant against the plaintiff. Both parties claim under Grover. The plaintiff by extent of execution, April 18, 1843. The defendant by deed of September 20, 1837. It is a perfect case for the defendant, unless affected by the deeds to Stevens.

In the first place we say that as the plaintiff is a stranger to the title of Stevens and Giles, he cannot avail himself of it against this defendant. The defendant was in possession of the lot, claiming it, and the title of Stevens and Giles was not asserted against him. Under the circumstances the plaintiff has nothing to do with the Stevens title. He does not stand in such a position as to entitle him to interfere in a conflict of title between the defendant and Giles or Ste-

vens.   As between the plaintiff and the defendant the title of the latter is best, both claiming under Grover, and the defendant by the elder conveyance.

Grover had actual seizin of the lot, and as between the plaintiff and the defendant that seizin was transferred to the defendant, who made entry under it, and the plaintiff cannot rebut that seizin by showing title in a third person, and no matter whether derived from Grover by an earlier conveyance or from another source.

But a better answer is, that the parties have settled that conflict themselves, and the title of Stevens has passed to the defendant.   Greenwood mortgaged this and other lots to Stevens, September 1, 1837, with warranty.   At that time he had not the Grover title, but acquiring it afterwards, it passed to Stevens by way of estoppel.   After he acquired the Grover title, he conveyed this lot to Stevens, October 18, 1837; the operation of which was to release his equity of redemption to it.

On the 28th of January, 1838, Bellows, Redington & Co., the parties really interested in this mortgage, for the consideration of $10,000, assigned the debt to Giles, and Stevens, by his deed of that date, sealed, acknowledged and recorded, and witnessed by two witnesses, for the consideration of $10,000, " assigned and made over to Giles the within described mortgaged premises, to have and to hold the same in as full and ample a manner as I might have held the same had not this assignment been made."   This assignment was upon the back of the mortgage, and the words are, " I hereby assign and make over the within described mortgaged premises; to have and to hold," &c.   A copy of this deed is made part of the case, and that shows it to be under seal, witnessed and acknowledged.

The question is, what passed to Giles by this deed from Stevens.   At the time Stevens conveyed to Giles he had an absolute estate in this lot; that is, both the legal and the equitable estate were united in him.   His purpose was to

convey all that interest to Giles, whatever it might be. The language of the instrument shows that purpose; he assigns and makes over the lands described in the mortgage, including No. 8, in the 8th range, to have and to hold in as ample a manner as he could have held. Any purpose short of a transfer of his whole interest is out of the question, without imputing the grossest fraud to Stevens.

But it is said by counsel that this is a mere assignment of the mortgage; that it was not intended to operate as a conveyance of real estate. The fact that it is entered upon the back of the mortgage makes no difference; the only question is whether the terms are broad enough to transfer Stevens' title. It is executed with all due formalities for the conveyance of real estate; it has proper parties, and the lands are well enough described by reference to the mortgage, and in this respect it stands precisely as if the lots were particularly specified, including No. 8 in the 8th range. He assigns and makes over the within described mortgaged premises; not the interest acquired by the mortgage, but the lands themselves; the word " mortgaged," as here used, being descriptive of the land and not of the interest in these lands. And we contend that the words " assign and make over," are ample to pass whatever title Stevens had at the time. That such was the intention is clear, both from the nature of the transaction and the terms of the *habendum.* By that the grantee was to have and hold the same in as full and ample a manner as the grantor might have held the same, had not the assignment been made.

Now it is admitted that if the assignment had not been made, Stevens would have held an absolute title, and that title, by the express terms of the *habendum,* was to be held by Giles.

The *habendum,* then, shows the purpose to convey all Stevens' title, and showing it clearly, as it does, it might be used to enlarge the grant if necessary. *Sumner* v. *Williams,* 8 Mass. Rep. 162; *Corbin* v. *Healey,* 20 Pick. 514, 515.

So the granting words may be restricted by the *habendum. James* v. *Murry*, 2 Cow. 290. See, also, *Bridge* v. *Wellington*, 1 Mass. Rep. 219, where the premises contained no words of grant at all, and yet the title was held to pass by the force of the *habendum* and the covenants of warranty, the terms used being such as clearly to show an intention to convey the fee.

It appearing clearly, then, from the whole deed, that the intention in this case was to convey Stevens' title to lot No. 8 to Giles, the court would so construe it, even if the granting words were obscure and doubtful, or in a legal view inapt. But we say that the words " assign and make over " are sufficient in and of themselves to pass all Stevens' title without any aid from other parts of the deed. It is a settled principle that a deed should be so construed as to make it operate, if possible, and also that all doubtful expressions are to be construed favorably to the grantee. *Bullen* v. *Runnels*, 2 N. H. Rep. 256. And here, unless the construction is given that we are contending for, the deed will be inoperative, perhaps, in respect to this lot, and the rule applies just the same as if this was the only lot conveyed. So no particular terms are necessary to constitute a grant by the legislature. 5 N. H. Rep. 280.

The words " limit and appoint " may operate as words of grant, so as to pass a reversion. 5 Term Rep. 124, 310.

So the words "quit my right and title " are sufficient. *Gorden* v. *Hayward*, 2 N. H. Rep. 402 ; *Jackson* v. *Fitch*, 10 Johns. 456.

Any writing that sufficiently identifies the parties, describes the land, acknowledges a sale in fee of the vendor's rights for a valuable consideration, is signed, sealed and duly attested, is a good deed of bargain and sale. *Chillis* v. *Conley's heirs*, 2 Dana, 21.

The words " make over and grant," are sufficient to raise a use. *Jackson* v. *Alexander*, 3 Johns. 488.

So are the words "release and assign." *Jackson* v. *Fisk*, 10 Johns. 456.

There are no precise technical words required to raise a use, and any words which amount to a present contract of sale or bargain, are sufficient for that purpose. *Ibid.*

The case of *Bridge* v. *Wellington*, 1 Mass. Rep. 219, before cited, is strongly in point. So a deed purporting to be a release, if made on a valuable consideration, will operate as a deed of bargain and sale. 2 A. K. Marsh. 396.

If the intent can be discovered from the deed, the court will carry that intention into effect, if it can be done consistently with the rules of law. *Frost* v. *Spalding*, 19 Pick. 445; *Cochecho Man. Co.* v. *Whittier*, 10 N. H. Rep. 305; *Goodtitle* v. *Bailey*, Cowp. 600.

So when the wife joins with the husband in a deed, "in token of her relinquishment of dower," without any words of grant on her part, it is good by way of estoppel. *Stevens* v. *Swift*, 8 Pick. 532.

In *Freeman* v. *Jackson*, 5 Pet. 580, it is said that "whatever may be the inacuracy of expression, or the inaptness of the words used in an instrument, in a legal view, if the intention to pass the legal title to property can be clearly discovered, the court will give effect to it, and construe the words accordingly. 2 Pet. Dig. 29.

Applying these principles to this case, we hold that the title of Stevens, whatever it was, passed to Giles by the deed, and if this be so, it is decisive of the case.

In *Hunt* v. *Hunt & al.*, 14 Pick. 374, the court held that where the conveyance is designed to operate in one form, but cannot, for the reason that something is wanting, yet, if the circumstances exist which are sufficient to pass it in another form, the court will so construe it, notwithstanding the words are not properly adapted to that purpose. See page 380.

But even supposing that the general words used be limited so as to operate only upon the title acquired by the

mortgage, still we contend that the whole interest of Stevens passed by the deed. And this, upon the ground that the deed of October 18th, 1837, was merely a release of the right of redemption, standing precisely upon the ground of a foreclosure in respect to that lot, by process of law.

That the conveyance of Oct. 18th was with full covenants of warranty, makes no difference. The legal estate was then in Stevens, and Greenwood had nothing to convey but the right of redemption. And the character of that release was in no way affected by the circumstance that as the deed contained two other parcels of land not included in the mortgage, a covenant of warranty was inserted, applying to all the lands.

In respect to this lot, the conveyance was substantially a release of the mortgager's equity. He had nothing else to convey. That was all that was wanted to make a perfect title in the mortgagee. It was so treated by the mortgagee, when he assigned it to Giles, and so to hold it will be doing substantial justice to all the parties, and carry into effect their manifest intentions.

If this is correct, then, according to the plaintiff's own view of the law, the interest of the mortgagee, discharged of the mortgager's equity, passed to Giles, giving him an absolute title to this lot. To avoid this result, he is obliged to contend that the legal and equitable estate being united in Stevens, the former sinks into the latter, and becomes, in effect, discharged as by performance of the condition.

Now we apprehend that if the doctrine of merger applies at all to the case of an union of the legal and equitable estates, it is more correct to say that the equitable is merged in the legal estate. So it is held in *Gardner* v. *Astor*, 3 Johns. ch. 53. But we apprehend that neither sinks into the other, so as to cease to be a source of title.

When both unite in the same person, under some circumstances, the title becomes absolute, and in that absolute title in fee simple sink both the others, that is, they no longer

exist in their original form, as the legal and equitable estates, but as sources of the absolute title into which they sink, they still exist, entitling the party to an appropriate remedy for any breach of covenant that may exist.

The title that swallows up the legal estate of the mortgagee and the equitable estate of the mortgager, is that which is made by the union of the two, and not the equitable estate alone, as contended for by the plaintiff.

The same effect is produced by a foreclosure of the equity of redemption. In that case, the conditional estate of the mortgagee is gone, merged, if you please, in that higher estate created by the determination of the equitable estate.

The effect upon the mortgagee's interest is the same, whether the equity of redemption is foreclosed or released, and it seems idle to hold that the character of the release can be affected in any way by the introduction of covenants of warranty. So, in accordance with these views, it was held in *Dexter* v. *Harris*, 2 Mason's C. C. Rep. 531 ; 2 Peter's Dig. 87, that a release of an equity of redemption does not operate by way of merger of the estate conveyed by the mortgage, but as an extinguishment of the equity of redemption.

So far from its being the law that the mortgage is merged in the subsequent deed, and thereby extinguished, it has often and always been held, even in a case where the holder of the equity had paid off the mortgage, and it was formally cancelled, together with the notes secured, that the law would treat it as an assignment of the mortgage, if necessary to protect the party against an intervening claim, and this, too, notwithstanding the intention was to extinguish the mortgage. Then both estates are united in one person, and yet effect is given to the mortgage the same as if no union had taken place. It is a strong instance of the anxiety of courts to give such a construction to contracts as will prevent injustice.

To hold in this case, that the mortgage was lost in the

subsequent title, and that, therefore, nothing passed by the deed to Giles, would, as we conceive, be a great departure from well established principles in analagous cases. Nor do the authorities cited by the plaintiff's counsel sustain any such position; the most they establish is, that in some cases the mortgage is merged in the absolute title, not in the subsequent title. But, again, although under some circumstances, the mortgage would be merged in the absolute title, we hold that it would not be so in this case.

We apprehend the true doctrine to be, both in law and in equity, that when the two estates are united in one and the same person, it shall operate as an extinguishment of the mortgage or not, according as his interest may be, and according to the real intent of the parties. This was so held in *James* v. *Morey*, 2 Cowen 246, which was a bill in equity. See page 291 and 360. This case, in many respects, was much like the present. The mortgagee had purchased two-thirds of the right of redemption, and about six months after, assigned the whole mortgage. From this fact, and others, the court held that it was the intention of the party to treat it as a subsisting mortgage, and that it had not merged. The same doctrine was held in *Gibson* v. *Culver*, 3 Pick. 475, which was an action at law, reäffirmed in 5 Pick. 146, same parties. So in *Hunt* v. *Hunt*, 14 Pick. 374. There the mortgager had conveyed his interest to A., and afterwards to T., and then the mortgagee conveyed to T., by deed of quitclaim, in the usual form. So the case of *Greenough* v. *Rolfe*, 4 N. H. Rep. 357, sustains the doctrine that the merger depends upon the intention. The court held that if the release was to enable the party to dispose of the land and pay off a prior incumbrance, and apply the balance to his debt, it would not extinguish his debt.

Merger is not favored in equity, and is never allowed, unless for special reasons, and to promote the intentions of the party. 4 Kent's Com. 101 and 102, and cases in notes,

5th ed. In this case, the doctrine of merger, especially as held by the plaintiff, would indeed be odious.

Giles buys a mortgage, apparently outstanding, for the sum of $10,000, and takes a deed, assigning and making over to him the lands described, to hold in as full and ample a manner as the mortgagee might have held, if the assignment had not been made. After this is done, the mortgager is made to say, by the plaintiff's counsel, that nothing passed by this deed, at least, as respects this lot, not because he had no title, but because he had a better one into which the mortgage title had sunk.

If the doctrine of merger was ever odious, and so it is often spoken of, it surely could never be more so than when speaking in this way, and especially when coming out of the mouth of a perfect stranger to the title in any way. But we apprehend that such a position has no foundation in law, any more than in justice.

Even if under ordinary circumstances the mortgage would sink into the subsequent title, the mortgagee, in this case, having sold the mortgage for a valuable consideration, as a subsisting title, would be estopped from setting up the claim that it had merged in the subsequent title. This is made still stronger by the fact that, on the faith of this assignment, Carleton buys of Giles, and pays his money for this particular lot, and it would be a gross fraud for him (Stevens) to set up a title against the defendant.

By holding, however, that the conveyance of the 18th October was a mere extinguishment of the right of redemption, all difficulties are avoided, and the intention of the parties fully carried out. If it is so regarded, then the benefits of that release would pass to Giles, as an incident to the mortgage, even if the deed from Stevens to Giles was nothing more than an assignment of the mortgage. But if the release to Stevens did not inure to the benefit of Giles, we stand well enough upon these grounds. In the first place, without any entry by Giles for foreclosure, he had the right, as

against the plaintiff, to cut this timber, and he could license this defendant to do it, either by parol or by deed.

His quitclaim deed, although it would not pass the mortgage title without an assignment of the debt, would authorize the entry of the defendant, and the cutting the timber. And in case of an action of trespass by Giles, against the defendant, the deed would be a good defence. If it would be a good defence against Giles, it is not easy to see why it would not be against a stranger to the title. It is true, it might not convey title to the land, but by way of estoppel, or in some other form, it would furnish to the defendant a good defence to an action by Giles, or any one under him, for cutting the timber.

· 2. Giles actually entered upon this lot, claiming it, and being in possession, conveyed it to the defendant. This, according to *Wallace* v. *Goodall*, in this county, is good. The possession of Giles would be transferred to the defendant. So in *Ellison* v. *Daniels*, 11 N. H. Rep. 284.

Besides, at the time of the conveyance by Giles to the defendant, the mortgage debt belonged to Giles, the assignment to Goodall having been made afterwards, (though it does not appear by the case, yet such was the fact,) and in the assignment, lot No. 8, in 8th range, is expressly excepted. We say, then, that the mortgage debt, or a proportional part of it, was transferred to the defendant by Giles' quitclaim. *Bell* v. *Morse*, 6 N. H. Rep. 205; *Barker & al.* v. *Parker & a.*, 4 Pick. 505.

3. The mortgage was foreclosed by entry and possession. The entry on one lot, parcel of the mortgaged premises, with the assent of the mortgager, for the whole, is an entry on all, all being in the same county. The mortgager was in possession of all, and that possession he yielded to Giles. If the lands be in the same county, and no conflicting possession, and there be an entry on one parcel, in name of the whole, the law deems him in the actual seizin of the whole.

Stearns on Real Actions 42, 383; Tillinghast Adams on Eject. 101; 3 Johns. Cases 109.

This mode of foreclosure was for the benefit of the mortgager, to save him the expense of a suit, taking care that he should have notice. In this case, he yielded possession, and it would be an idle and useless ceremony to enter on each wild lot. There is no ground for distinguishing this from other cases. So the plaintiff, not claiming under this title, has no right to question the regularity of this foreclosure. *Thompson* v. *Carr*, 5 N. H. Rep. 517.

There having been actual notice, and the mortgager having yielded possession for the purpose of a foreclosure, it was not necessary for Giles to remain there. See *Thayer* v. *Smith*, 17 Mass. 429; *Kittridge* v. *Bellows*, 4 N. H. Rep. 424; *Gilman* v. *Hidden*, 5 N. H. Rep. 30.

Another question is, supposing the defendant acquired no title from Giles or Stevens, can the plaintiff maintain this action? He has no title except what he acquired by the extent of the execution against Grover, and an entry under it. Upon the other hand, the defendant claims under a deed from Grover, made previous to the extent. This the plaintiff undertakes to answer, by showing that, before Grover conveyed the title under which the defendant claims, he had conveyed all his interest to another. Not that any thing passed by the extent to the plaintiff, but that nothing passed to the defendant in consequence of the prior conveyance.

Now, as between the plaintiff and defendant, the latter has the better title, and is in possession under it. The plaintiff has a mere naked entry, without title as against this defendant. Besides, the defendant being in, under a title paramount to the title of the plaintiff, has obtained a release from the person who is in possession of the land, claiming under the title first conveyed by Grover, and who, to say the least, is equitably entitled to hold that interest. It is enough for the defendant to show that, as between him and the plaintiff, he has the best title, as he has done it in

this case. When the defendant is called upon by any person claiming under the first deed from Grover, it will be time to investigate that title, but a mere stranger cannot require it. In the cases of sales made by executors and administrators, or other trustees, or by collectors of taxes, it is not necessary to prove the regularity of the proceedings in the suit against a stranger to the original title. *Thompson* v. *Carr*, 5 N. H. Rep. 517.

So in this case, if it were necessary to connect ourselves with the final conveyance from Grover, which we do not admit, we hold that having a conveyance from one apparently holding that title, the plaintiff has no right to insist upon proof of all the formalities necessary to a strict legal conveyance.

As, for instance, he stands in no situation to require an investigation of the question whether the circumstances of the conveyance from Stevens to Giles was such as to estop Stevens from setting up in himself the title acquired from Greenwood by the deed of October, 1837.

It is certain that the facts might have been such as to create such an estoppel, and we hold that enough already appears in this case; but, at any rate, we feel sure that the plaintiff is not entitled to require such an investigation.

Woods, J. The plaintiff derives his title to the land in controversy from a levy of an execution in his favor against James Grover, who had previously been in possession under a deed from Bellows and Carlisle. But before the commencement of the action which resulted in that execution, Grover had parted with his title, so that the levy was of no avail, except to define and characterize the possession taken under it by the plaintiff in 1843. The repeated acts of ownership, performed by his direction and authority, during that year, to wit, the possession given on the 25th of May, Grover's entry in the autumn, by the direction of the plaintiff's attorney, and the entry by Thomas Montgomery after-

wards, by a like authority, together with the payment of the taxes, as these several doings are described in the case, and all under a claim of the title conferred by the levy, undoubtedly, avail to give him that possession of the land included in the extent, which enabled him to maintain an action of trespass against any party invading its limits, and not having a better title or an older possession.

To prove such older possession, the defendant produced the deed of Bellows and Carlisle to Grover, of April 30, 1836, under which Grover soon after entered and claimed the lot. Grover transmitted his possession and title, which appears upon the case to have been good, by his deed of September 20, 1837, to Greenwood, who, on the 27th of June, 1842, made a deed of it to McKean and the defendant, and McKean's claim passed to the defendant, April 8, 1843.

If this were all, the case would be a very plain one, for the title of Grover would appear by the papers to have passed to this defendant before any possession had been acquired by the plaintiff. But it appears that Greenwood, by his deed of September 1, 1837, with full covenants of warranty and by force thereof, operating by way of estoppel upon the after-acquired estate, mortgaged the same to Truman Stevens, and on the 16th of October following, made his absolute deed, with full covenants to the same Stevens, of the same land, in the mean time, conveyed from Grover to himself.

A question here arises and is discussed by counsel, whether the plaintiff, who does not claim under either of these deeds to Stevens, may avail himself of them to show that, at the time that Greenwood undertook to convey to the defendant and McKean, he had parted with his title, so that the defendant took nothing by the deed which he puts in.

The rule on this subject, as laid down in this State and elsewhere is, that where a party has shown a seizin in himself, his adversary cannot avoid the effect of it by showing

a title in a third person. It is also held that a deed from one actually seized is such evidence of seizin as to justify the application of the rule. *Enfield* v. *Permit*, 8 N. H. Rep. 512; *Bailey v. March*, 3 N. H. Rep. 274.

But where the evidence tends to show that the party was never seized, it is admissible. Jackson on Real Actions 157; *Bailey* v. *March*, 2 N. H. Rep. 522; *King* v. *Barnes*, 18 Pick. 24. In this case, the party claimed as heir, and proof was admitted, in derogation of his title, that the ancestor had conveyed to another.

The present case, perhaps, might admit of a similar application of the rule, and the plaintiff might insist upon any legal evidence that, prior to the deed of Greenwood to the defendant and McKean, Greenwood had parted with his title, and had nothing to convey. But the case does not render it necessary to decide such a question, as will appear when we consider the effects of these two deeds of Greenwood, and the subsequent conveyances. And it is plain that the first, being a mere mortgage, was of no avail to defeat his seizin, for, in legal contemplation, he remained the owner of the land as against all persons but the mortgagee, and might well have transmitted to the defendant a good title for all purposes of this defence.

But this mortgage was followed, soon after, on the 16th of October, by the absolute deed, divesting him of all property whatever in the land, and entirely defeating the force of the subsequent deed to the defendant and McKean. Carleton and McKean, therefore, took nothing by the deed of Greenwood.

These two conveyances, to wit, the mortgage of September 1, and the absolute deed of October 16, 1837, were made to Truman Stevens, in trust for Bellows, Redington & Co., who, in the further execution of that trust, made and executed an instrument upon the back of the mortgage, with the formalities necessary to pass real estate, whereby, for consideration expressed, he " assigns and makes over " to

Nehemiah Giles " the within-described mortgaged premises, to have and to hold the same in as full and ample a manner as I might have and hold the same, had not this assignment been made." At the same time, the notes secured by the mortgage were duly and legally indorsed and assigned to the same party.

A question has been made as to what passed by this assignment, as it has been termed, and as it seems probable the parties to it supposed it to be, which raises another question as to the effect of Greenwood's deed to Stevens of the 16th of October. The effect of this deed was to convey to Stevens all the estate and interest which Greenwood had, or might afterwards acquire, resembling, in this respect, a grant, and working an estoppel by the covenants it contained. This estate or interest was a mere equity of redemption, and there seems no practical object in inquiring whether this equity was conveyed or released to Stevens; for as he was at the time the holder of the mortgage, he became by force of the deed, the absolute owner of the estate, in contemplation of law, the two interests having been merged, the one in the other, so as to form an absolute estate in fee simple. *Greenough* v. *Rolfe*, 4 N. H. Rep. 342; *Eaton* v. *George*, 2 N. H. Rep. 300; *Harrison* v. *Phillips Academy*, 12 Mass. 481.

Although this effect of the union of these two interests in one person is perfectly established at law, cases have arisen in courts of equity, in which it has been necessary, for purposes of justice, and to carry out the just intention of parties, to keep them separate, and the refined doctrines of those courts have, to a certain extent, been adopted at law, where the exigences of the cases have required it, as an alternative to sending the parties to those courts for relief. It has accordingly been settled that as between parties standing in a relation to each other to render the application of the rule proper, the question of merger, in such cases, is a question of intention, on the part of the person on whom the two

estates fall, or a question of duty towards those to whom he might stand in a fiduciary relation. *James* v. *Morey*, 2 Cow. 246 ; *Gardner* v. *Astor*, 3 J. C. Rep. 55. In the present case, if the assignment of Stevens to Giles could be taken to have conveyed, in terms, no more than a mortgagee's interest in the land, Stevens might as against Giles, seeking a remedy by his mortgage, well be precluded from insisting upon a merger, and the consequent invalidity of his assignment. Especially as he was a mere trustee for Bellows, Redington & Co., having no interest in the land, but bound by his office to hold it in subserviency to the just purposes of that party and their assigns. And he could not, it would seem, set up his legal title as against Giles, seeking to take possession under the mortgage so attempted to be assigned. As against Stevens, and all claiming under him, chargeable with notice of the facts, by public registry or otherwise, according to law, Giles could, as assignee of the mortgage, maintain his writ of entry, or in any other proper manner, gain and keep possession of the land. Having gained, he might transmit his possession to another, who might hold it against all but those standing in the place of mortgagers, and even as against them until redeemed.

The case shows that Giles, in the fore part of January, 1845, and, prior to his deed to the defendant, went upon the lot in question, claiming it. No doubt, then, exists that, being at the time assignee of the mortgage, and clothed with the possession, his deed of the land passed to the defendant a rightful possession, constituting a good answer to the plaintiff's action.

But it is not, perhaps, necessary to insist on the equitable doctrine which would have kept alive and distinct from the estate of the mortgager, the interest or estate of the mortgagee while the two co-existed in the person of Stevens. For there seems to be no objection to regarding the instrument of January, 28, 1838, indorsed upon the mortage, and executed with the formalities necessary for passing real es-

Hutchins *v.* Carleton.

tate, as having actually conveyed from Stevens to Giles the fee simple, which, in contemplation of law, was perfected in him by the two deeds of Greenwood, or at least a freehold, if the terms of the *habendum* be deemed insufficient to enlarge the words of the grant to a greater extent.

As to the words necessary to be used in a deed under our statute, a great latitude, at least a great liberality has been allowed, in the numerous decisions which are to be found, and of which many have been cited in argument.

Upon the strength and authority of these decisions, it may well be said, as is said in regard to deeds of bargain and sale, " nothing can be more liberal than the rules of law as to the words requisite to create them." " Assign and make over " are as effectual when a good consideration is expressed, as " quit my claim," or many other forms that have been sanctioned as sufficient to raise a use or pass an estate. " Assign " is, in the opinion of Chancellor *Kent,* tantamount to " grant," and effectual for all the purposes of the deed of grant established by the statute of the State of New York. 4 Kent's Com. 491, 492, *in notis.* The conclusion, therefore, is, that an estate of freehold, at least, passed by the several mesne conveyances from Grover to this defendant, and that, according to the case, the verdict must be set aside and there must be

*Judgment for the defendant.*