FARMERS COOPERATIVE EXCHANGE, INC. v. WILLIAM C. H. HOLDER, AND LELAND BARBOUR AND GRAYSON BYRD, TRADING AS B & B FARM EQUIPMENT COMPANY.

(Filed 15 January, 1965.)

**Chattel Mortgages and Conditional Sales § 14—**

> Where, upon the mortgagor's claim of breach of the contract by the mortgagee in failing to service the chattel purchased, the mortgagee, with consent of the mortgagor, takes possession of the chattel and has the mortgagor execute a relinquishment of the equity of the redemption, and thereafter treats the property as if it were the absolute owner, the equitable and legal title will merge in the mortgagee, and the mortgagee may not thereafter sell the property and seek to recover from the mortgagor deficiency on the purchase money notes.

APPEAL by plaintiff from *Clark, S.J.,* March 1964 Civil Session of WAKE.

Holder, in April 1961, purchased from plaintiff through its dealer agents, Barbour and Byrd, a Cockshutt tractor. He made a down payment and executed a conditional sales contract on the tractor to secure the balance, payable in equal installments in April 1962 and April 1963. Plaintiff sold the tractor at public auction in February 1963. It credited Holder with $1,340.00, the sum received from the auction, and now seeks to recover the asserted balance of $1,521.88.

Plaintiff seeks to impose liability on Barbour and Byrd as guarantors of Holder's obligation.

Holder admitted the purchase and execution of the conditional sales contract. To defeat plaintiff's claim, he alleged a re-conveyance of the property in full discharge of the unpaid balance.

Defendants Barbour and Byrd rely on the facts alleged by Holder to defeat plaintiff's claim.

Defendants' motion for nonsuit made at the conclusion of plaintiff's evidence was allowed. Plaintiff excepted and appealed.

*L. Bruce Gunter and R. P. Upchurch for plaintiff appellant.*

*Ferree, Anderson & Ogburn for appellee Holder, Deane F. Bell for appellees Barbour and Byrd.*

RODMAN, J. Plaintiff's evidence suffices to show these facts: Plaintiff agreed to provide service when the tractor was sold. Holder, when the first installment became due, refused to pay, assigning as his reason plaintiff's failure to provide maintenance service as it had agreed. His offer to surrender possession was accepted in April or May. On July 24, 1962, Holder, at the request of plaintiff, executed a writing

denominated "RELEASE." The release recites Holder's purchase from plaintiff and the execution of the conditional sales contract to secure payment of the balance of the purchase money. Following the recitals, the instrument provides: "The undersigned hereby releases to the Farmers Cooperative Exchange, Inc. all title and interest in the foregoing merchandise and hereby authorizes the Farmers Cooperative Exchange, Inc. to repossess the foregoing merchandise, free from any and all claims on the part of the undersigned and/or any other person."

The tractor was not sheltered after delivery to plaintiff until some time in the fall of 1962. Plaintiff sought to negotiate for a private sale of the machine. It permitted one of its local directors to use the machine in harvesting silage in 1962. He "kept it somewhere in the neighborhood of three weeks." The person who used it "was interested at $2,300 but not at $2,800." "[T]he fair market value of that tractor would be somewhat less in April or February 1963, than it was back in April of 1962."

On March 4, 1963, the attorney for plaintiff wrote defendants calling attention to the fact that the tractor had been sold at auction for $1,340.00. The letter demanded payment of the difference between the amount received from the auction and the amount owing, as shown by the sales contract. Plaintiff offered no evidence to show Holder had notice of the auction, or that it made any demand on Holder after he executed the release until after the auction.

The law applicable to this case was, we think, correctly stated by Stacy, J. in *Furniture Co. v. Potter*, 188 N.C. 145, 124 S.E. 122. He said: "It is undoubtedly the general rule of law that where one who holds a mortgage on real estate becomes the owner of the fee, and the two estates are thus united in the same person, ordinarily the former estate merges in the latter. *Hutchins v. Carleton*, 19 N.H. 487. The equitable or lesser estate is said to be swallowed up, or 'drowned out,' by the legal or greater interest. But this rule does not apply where such merger would be inimical to the interests of the owner, as, for example, where it would prevent his setting up the mortgage to defeat an intermediate title — such as a subsequent lien or a second mortgage, as in the instant case — unless the parties intended otherwise; and this intention will not be presumed contrary to the apparent interests of the owner." *Land Bank v. Moss*, 215 N.C. 445, 2 S.E. 2d 378; *Lawrence v. Beck*, 185 N.C. 196, 116 S.E. 424; *Santa Cruz v. State*, 78 So. 2d 900; *Kansas Seventh Day Adventist Conf. Ass'n. v. Williams*, 134 P. 2d 626; *Gimbel v. Venino*, 39 A. 2d 489; 59 C.J.S., Mortgages, §§ 439 & 440.

We find nothing in the evidence which would prevent the application of the rule; to the contrary, the evidence offered by plaintiff suggests sound reasons for its application. Holder was making claims against the F.C.X. because of the breach of its contract. Plaintiff, not content with merely taking possession of the property, took from Holder an instrument relinquishing his equity of redemption. Plaintiff made no attempt for many months to exercise the power of sale. It made no demand for payment of the debt. It treated the property and its rights with respect thereto as if it were the absolute owner. It permitted one of its officers to use the tractor to harvest his crop. It negotiated for a private sale of the property. Stacy, J., in *Furniture Co. v. Potter, supra,* quotes approvingly this statement from 27 Cyc., "On the other hand, if he [the mortgagee] assumes to deal with the estate as absolute owner, and conveys it to another, it proves a merger."

Plaintiff's witness, D. V. Barbour, testified on direct examination that he "saw Mr. Holder sign a release just like that." He had reference to plaintiff's exhibit No. 3, which has been quoted. He was then asked by counsel for plaintiff this question: "Do you know the contents of the one you saw Mr. Holder sign?" He answered: "Yes, it was keeping me and F.C.X. from being responsible for anything by Mr. Holder." An objection was made, presumably by defendant, and sustained. The evidence which plaintiff thus sought to offer was excluded. We do not use it as a basis for the conclusion here reached; but certainly the excluded evidence does not weaken the conclusion we reach.

The judgment is

Affirmed.